IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division



FILED

SEP 24 2014

CLERK, US DISTRICT COURT
NORFOLK, VA

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                 CRIMINAL ACTION NO. 4:14cr37

ISAAC ALLEN CHAPPELL,

      Defendant.

## *MEMORANDUM OPINION & ORDER*

Before the Court is Defendant Isaac Allen Chappell's Motion to Suppress Defendant's

statements to law enforcement agents and all physical evidence obtained in violation of the

Fourth Amendment to the Constitution of the United States of America. Specifically, Defendant

contends that the police lacked reasonable suspicion to detain him because they acted on

information from an anonymous tip without corroborating the information for sufficient indicia

of reliability. Having reviewed the pleadings and held a hearing on the Motion to Suppress, this

matter is now ripe for judicial determination. Defendant's Motion to Suppress evidence and

statements from his seizure on April 5, 2014, is **DENIED**.

## I. FACTUAL AND PROCEDURAL HISTORY

The Indictment and the instant Motion to Suppress both stem from a single incident on

April 5, 2014,[1] at the area of 20th Street and Madison Avenue in Newport News, Virginia in

reference to a reported call of an individual with drugs in his possession. Def.'s Mot. to

Suppress 1, ECF No. 14. According to the Government, at approximately 4:28 P.M. a reliable

confidential source contacted Narcotics Detective Randy Gibson and provided information

---

[1] This is the date given in the Indictment and in Defendant's Motion to Suppress. The Government provides
April 4, 2014, as the date of the incident in its Response.

concerning an individual in possession of crack cocaine. Gov't's Resp. to Def.'s Mot. to Suppress 1–2, ECF No. 16. In its Response, the Government did not specify how the source contacted Detective Gibson – whether via a phone call, text message, or face-to-face encounter. The Defendant, however, contended that the source of the information was an anonymous phone call. Def.'s Mot. to Suppress 3.

The information the source provided included the suspect's physical appearance and location: a black male wearing a black leather jacket, a blue shirt, black pants, black sandals, and yellow socks at 20th Street and Madison Avenue in Newport News, Virginia. Gov't's Resp. to Def.'s Mot. to Suppress 1–2. The Government stated that the source saw Defendant remove narcotics from his pocket, examine the narcotics, and place them back into his pocket. *Id.* at 5.

The Government argued that the informant was known to Detective Gibson personally since 2010 and had provided him with "detailed, truthful and accurate information for several years." *Id.* at 1; 5. The information the confidential source provided Detective Gibson in the past furthered investigations and resulted in lawful arrests. *Id.* at 1. At approximately 4:33 P.M. Detective Gibson relayed the content of the tip to police dispatch. *Id.* At 4:37 P.M., a male matching that description was observed by the responding officers in the area of 20th Street and Madison Avenue. *Id.* at 2.

The Government asserts that when the officers arrived on the scene, Defendant attempted to enter Apartment A of 1911 Madison Avenue, quickening his pace and repeatedly looking over his shoulder. *Id.* Officers reported that they approached Defendant and told him he was being detained for a narcotics investigation. *Id.* Defendant failed to stop. Defendant stated that Officer Effinger grabbed him and he resisted. Def.'s Mot. to Suppress 2. Officers assert Defendant began reaching into his jacket (in the vicinity of where law enforcement later found

2

the loaded firearm). Gov't's Resp. to Def.'s Mot. to Suppress 2. As officers attempted to gain control of his arms, Defendant continued to resist and was eventually subdued by a taser. *Id.* After detaining Defendant, law enforcement conducted a search of Defendant's person and found a loaded Norinco Model 213, nine millimeter semi-automatic pistol, bearing serial number 21030251 in Defendant's front, left, inside jacket pocket. *Id.*

In addition, officers found a clear plastic baggie containing suspected crack cocaine in Defendant's front right jacket pocket and five individually wrapped corner baggies of suspected marijuana from his inner front, right pants pocket. As the officer pulled them out, Defendant uttered, "Yeah that's weed. I know. You got that." *Id.*

On June 9, 2014, an Eastern District of Virginia Grand Jury issued a single count Criminal Indictment charging Defendant with Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The indictment also included an allegation of criminal forfeiture, 18 U.S.C. §§ 924(d) and 981(a)(1)(C). On August 11, 2014, Defendant filed the instant Motion to Suppress and the Government filed a Response in Opposition on August 19, 2014. Defendant did not file a Reply to the Government's Response in Opposition.

At the suppression hearing on September 2, 2014, the Government called Detective Gibson as a witness. Detective Gibson testified that the information he received came via a cell phone call from a confidential informant ("CI") he had been working with since 2010. Detective Gibson stated the CI was an "active" source who had provided information concerning narcotics and weapons violations, gang offenses, fugitive cases, and violent crime. Detective Gibson stated this CI's information had resulted in arrests and convictions.

3

## II. LEGAL STANDARDS

### A.    Motion to Suppress

When deciding a motion to suppress, the district court may make findings of fact and rulings of law. *United States v. Stevenson*, 396 F.3d 538, 541 (4th Cir. 2005). During the hearing, "the credibility of the witness and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge." *United States v. McKneely*, 6 F.3d 1447, 1452–53 (10th Cir. 1993) (quoting *United States v. Walker*, 933 F.2d 812, 815 (10th Cir. 1991)). *See also Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 56 F.3d 556, 567 (4th Cir. 1995) ("[I]n the usual case, the factfinder is in a better position to make judgments about the reliability of some forms of evidence than a reviewing body acting solely on the basis of a written record of that evidence. Evaluation of the credibility of a live witness is the most obvious example.") (quoting *Concrete Pipe & Products of Cal., Inc. v. Construction Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 623 (1993)). The burden of proof is on the party who seeks to suppress the evidence. *United States v. Dickerson*, 655 F.2d 559, 561 (4th Cir. 1981). Once the defendant establishes a basis for his motion to suppress, the burden shifts to the government to prove the admissibility of the challenged evidence by a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974) ("[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence.").

### B.    Lack of Reasonable Suspicion

The Fourth Amendment protects citizens from "unreasonable searches and seizures" by the Government. U.S. Const. amend. IV. Pursuant to the exclusionary rule, "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim

4

of [an] illegal search and seizure." *United States v. Calandra*, 414 U.S. 338, 347 (1974). Consistent with the Fourth Amendment, a police officer may "conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion" that the person is engaged in criminal activity. *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)); *see also United States v. Cortez*, 449 U.S. 411, 417 (1981). The officer must have "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Navarette v. California*, 134 S. Ct. 1683, 1687 (2014) (quoting *Cortez*, 449 U.S. at 417–418).

What an officer knew before he conducted his search is a critical aspect in measuring the reasonableness of official suspicion. *Florida v. J.L.*, 529 U.S. 266, 271 (2000). Reasonable suspicion for an investigatory stop can be based on information supplied by another person, and not solely upon an officer's personal observation. *Adams v. Williams*, 407 U.S. 143, 147 (1972). The reasonable suspicion inquiry requires a consideration of "the totality of the circumstances – the whole picture," *Navarette*, 134 S. Ct. at 1687 (quoting *Cortez*, 449 U.S. at 417), such that "all the facts surrounding a tip" contribute to the analysis. *United States v. Perkins*, 363 F.3d 317, 324 (4th Cir. 2004).

In addition to the content of information possessed by police, reasonable suspicion is dependent upon the "degree of reliability" of that information. *Alabama v. White*, 496 U.S. 325, 330 (1990). These two factors, "quantity and quality," are weighed such that "if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." *Id.* The United States Court of Appeals for the Second Circuit determined that the contemporaneous nature of a tip from a CI will be a factor weighing in favor of reasonable suspicion. *United States v. Vargas*,

5

369 F.3d 98, 101 (2d Cir. 2004).

In determining the reliability of the tip, the "veracity," "reliability," and "basis of knowledge" of the *tipster* are relevant. *White*, 496 U.S. at 328. "Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability." *Adams*, 407 U.S. at 147. *See also Perkins*, 363 F.3d at 324 ("For in reality, tips fall somewhere on a spectrum of reliability . . . ."). Accordingly, there is no one rule which will govern all instances. *Adams*, 407 U.S. at 147.

Drawing distinctions between information provided by anonymous tipsters or via known informants, the Supreme Court has determined that tips from known informants who have previously provided information in the past are stronger than those from anonymous phone calls. *Id.* at 146. Even an "unverified tip" from a known informant, though insufficient for an arrest or search warrant, may "carr[y] enough indicia of reliability" to legitimize a forcible stop. *Id.* at 147. Indeed, "[t]he reliability of an informant may be established by showing that 'the informant has previously given tips that have proved to be correct.'" *United States v. Chavez*, 902 F.2d 259, 264 (4th Cir. 1990) (quoting *United States v. Jackson*, 818 F.2d 345, 348 (5th Cir. 1987)). Indeed, the Fourth Circuit has clearly stated that "[i]nformation of criminal activity given by a known reliable informant is enough to sustain a *Terry* stop." *United States v. Harris*, 39 F.3d 1262, 1269 (4th Cir. 1994) (citing *White*, 496 U.S. at 328). *See also United States v. Singh*, 363 F.3d 347, 355 (4th Cir. 2004) ("A tip from known informant can suffice by itself to establish reasonable suspicion for a vehicle stop, even if the police do not corroborate the tip prior to the stop with their own independent observation.") (quoting *United States v. Spotts*, 275 F.3d 714, 720 (8th Cir. 2002)). An officer can judge the credibility of a known informant "firsthand and thus confirm whether the tip is sufficiently reliable to support reasonable suspicion." *Perkins*,

6

363 F.3d at 323.

Another factor bolstering tips from known informants is the precarious position they place themselves in when they come forward. By reporting crime, known informants expose themselves on two fronts – on the one hand, answerable to law enforcement and, on the other, vulnerable to the persons they are accusing. Anonymity insulates tipsters from being found by either police or the angry subject of their tips. By contrast, not only are known informants on the hook with the police if the information they provided is deemed false, *United States v. Christmas*, 222 F.3d 141, 144 (4th Cir. 2000), when they give information about a subject who is nearby, they are "exposed to a risk of retaliation" from that person. *United States v. Valentine*, 232 F.3d 350, 354 (4th Cir. 2000). Both prospects make fabrication unlikely.

### III. DISCUSSION

To prevent suppression of statements and evidence seized as a result of a search of Defendant's person, the Government must establish by a preponderance of the evidence that the police possessed reasonable suspicion to justify their investigatory stop. The parties dispute the nature of the source of the information – i.e., whether an anonymous tipster or a known informant.

Having heard the testimony of Detective Gibson, the Court finds that the source of the tip was a known, reliable informant of the Newport News Police Department. Detective Gibson established this confidential source in 2010. He was personally familiar with the CI. Although informants are assets of the Newport News Police Department, Detective Gibson "exclusively" receives information from this particular CI and when he is not on duty, relays that information to other officers. As a condition of working with law enforcement as a CI, the source signed a code of conduct agreement which listed various rules such as agreeing to refrain from the use of

7

illegal narcotics and, if requested, submitting a urine sample. Detective Gibson testified that the CI understood that if unreliable information was provided, he would no longer work with the CI.

Since 2010, the CI has provided what Detective Gibson described as "extremely reliable" information which furthered investigations, led to arrests, or resulted in convictions in a range of cases from narcotics and weapons violations to violent crimes and fugitive cases. Indeed, two months prior to the April 5 incident, the CI had provided Detective Gibson information about an individual wanted for homicide. Detective Gibson surmised that the CI had been paid between 10 to 15 times for information he had provided, with payouts reaching as high as $400. Detective Gibson clarified that the amount of pay depends on the nature of the information provided and could be as low as $50. During the hearing, Defendant argued that this financial incentive undermines the informant's credibility. The Court disagrees. While it is true the CI reasonably stood to be paid as a result of the information provided in this case, the amount had yet to be determined. Furthermore, providing false information would not only jeopardize the CI's working relationship with the police and put him or her at legal risk for lying to law enforcement, it would also place the CI at real risk for retaliation if Defendant discovered his or her identity. Reporting the information, despite these risks, lends to the CI's credibility.

Defendant contends that there should have been some corroboration on the part of the police, but this argument is unavailing. Courts have been clear that police need not corroborate information given by known informants. Like the CI in *Harris*, the CI in this case was known to provide reliable information that led to arrests. Thus, police corroboration was unnecessary. But the police, as in *Perkins*, did confirm important aspects of the tip before stopping Defendant. Although the *Perkins* court did not resolve whether the tip in dispute was anonymous or not, it did provide guidance on what constitutes police corroboration. In that case, the caller gave a

8

detailed description regarding the color of the car carrying the suspects ("red car with a silver or white stripe") and its exact position. *Perkins*, 363 F.3d at 322. This was how the police officer found the suspects before stopping them. Similarly, the source in this case gave a detailed physical description of Defendant which was accurate – even down to his yellow socks and sandals – and Defendant was found at the exact location of 20th and Madison. That the police discovered Defendant "just as the caller had described, offers important corroboration of the tip." *Id.*

In addition to establishing that the CI has been reliable in the past, Detective Gibson's testimony indicated the CI's tip in this case was reliable. Having worked with the CI on prior occasions, Detective Gibson was able to judge the reliability of the tip firsthand. He knew the CI personally and therefore recognized the CI's voice. Detective Gibson stated that during their phone call, the CI spoke in a normal speaking voice. As someone familiar with the CI's voice pattern, Detective Gibson was in a position to detect whether the source was using slurred speech or an irregular speech pattern. The presence of either would indicate the CI was possibly under the influence or suffering from a defect so as to undermine the credibility of the information conveyed. Detective Gibson made no such observation. Detective Gibson also ensured that the information reported was timely and contemporaneous to the CI's call. After he asked the CI when the observations of Defendant were made, he testified the CI told him the call was being made immediately after witnessing Defendant with the narcotics. That Detective Gibson viewed the information as credible is underscored by the fact that he acted quickly, and relayed the information to police dispatch within five minutes of receiving the call.

In evaluating the totality of circumstances, the Court also takes into account Defendant's behavior at the scene. "[U]nprovoked flight upon noticing the police" and "nervous, evasive

behavior" are "pertinent factor[s] in determining reasonable suspicion." *Wardlow*, 528 U.S. at 124 (2000). The Fourth Circuit has held that "evasive conduct, although stopping short of headlong flight" remains an important factor for the court's reasonable suspicion inquiry. *United States v. Bumpers*, 705 F.3d 168, 175 (4th Cir. 2013), *cert. denied*, 134 S. Ct. 218 (2013) (determining that a suspect attempted to evade police when he walked away "at a fast pace" upon seeing a patrol car). In this case, Defendant quickly attempted to enter a residence when law enforcement arrived at the scene. Looking over his shoulder and quickening his pace, Defendant continued to walk away, even after officers instructed him that he was being detained. His unprovoked, evasive behavior helps establish reasonable suspicion.

The Court finds the CI's tip possessed sufficient indicia of reliability to support reasonable suspicion, and thus concludes the search was constitutional. As a result, the Court will not suppress the gun or narcotics obtained, or statements Defendant made after he was lawfully seized. Notwithstanding this ruling, Defendant argues that the police lacked probable cause for an arrest. The Court disagrees and finds the police had probable cause for arrest because of the narcotics found on Defendant's person.

## IV. CONCLUSION

For the reasons stated above, the Motion to Suppress statements made and evidence obtained during Defendant's seizure is **DENIED** because the police possessed a reasonable

suspicion leading to the stop based on information provided by a known, reliable confidential informant.

The Clerk is **DIRECTED** to provide a copy of this Memorandum Opinion and Order to counsel for the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
September 2⁵, 2014

Raymond A. Jackson
United States District Judge

11